UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                          :

PEYTON HOLDINGS, LLC,            :

                *Plaintiff*,      :

      *-against-*          :

                        :        18 Civ. 3165 (PAC)

CLOVER AVIATION COMPANY,   :
HAYMAN WOODWARD, AND     :
LEONARDO FREITAS,         :        **OPINION & ORDER**

                        :

              *Defendants*.    :

                        :
-----------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

      This contract dispute centers on Defendants Clover Aviation Company ("Clover"),

Hayman Woodward, and Leonardo Freitas (together "Defendants") failure to pay Plaintiff

Peyton Holdings, LLC ("Peyton" or "Plaintiff") for rent and related costs associated with

operation and maintenance of a leased aircraft.   Plaintiff moves for summary judgment, seeking

a ruling that it is entitled to rent and associated costs for the leased aircraft.[1]  (Pl. Mot., Dkt. 38.)

Defendants do not dispute that they have failed to pay the required rent and associated costs

provided under the Lease Agreement, but rather defend on the ground that Plaintiff is not entitled

to accelerated damages for the breach of the Lease Agreement and that Plaintiff has failed to

submit sufficient proof of certain damages.  (*See* Defs. Opp'n, Dkt. 41.)

      Defendants are obligated to pay for the leased aircraft under the Lease Agreement's "hell

---

[1] Plaintiff dedicates one paragraph of its motion to claiming that it also entitled to summary
judgment on the Aircraft Purchase Agreement that was negotiated in an attempt to settle the
instant litigation.  The claim for breach of the purchase agreement was not pleaded in the
Complaint and thus, the Court need not consider it.

or high water" clause.  Plaintiff's motion for summary judgment is granted in part.

## BACKGROUND

The following facts are undisputed.[2]  On November 17, 2017, Defendant Clover executed an Aircraft Lease Agreement ("Lease Agreement") on a Gulfstream V, Serial Number 552 Registration N90JE (the "Aircraft").  (Pl.'s Undisputed Statement of Facts ¶ 1 (Dkt. 39); Kopacz Dec. ¶ 2, Ex. A-1 ("Lease Agreement").)  The lease is for a term of sixty months at a rental of $146,500 per month for the aircraft for the term of the Lease Agreement.  (Kopacz Dec. ¶ 2; Lease Agreement ¶¶ 6.1, 6.2.)  Rent payments were due by the first day of each month during the lease term.  (Lease Agreement ¶ 6.5.)

In addition to rental payments, Defendants owe other associated costs under the lease. The lease provides that Defendants must pay Engine Reserve payments for each rent period.  (*Id.* at ¶ 10.1.)  The monthly Engine Reserve payment was $459.83 per flight hour per engine in 2017, and increased to $467.07 per flight hour per engine in 2018, and increased to $489.67 per flight hour per engine in 2019 in accordance with rate adjustments issue by Rolls Royce Corporate Care.  (Kopacz Dec. ¶ 4; Lease Agreement ¶ 10.5.)  The Engine Reserve payments are subject to a minimum monthly engine reserve amount of $22,992 per rent period, which is due regardless of the actual flight hours during that rent period.  (Lease Agreement ¶¶ 10.1, 10.2.) The minimum monthly engine reserve payment is due in advance of each rent period.  (*Id.* at ¶ 10.3.)  Defendants must pay Engine Reserves in excess of the minimum monthly payment "no later than ten (10) days after the last day of the Rent Period to which the Engine Reserves relate."  (*Id.* at ¶ 10.4.)  In addition, the Lease provides that Clover must pay $100.92 per APU

---

[2] The parties agree that New York law, which is designated in the contract, applies in this case.

Hour towards APU[3] reserves.  (*Id.* at ¶ 11.1.)  The lease also obligates Defendants to pay a minimum monthly APU Reserve in the amount of $628.87, which is due regardless of the actual APU hours during that month.  (*Id.* at ¶ 11.2.)  Defendants must pay any APU Reserves in excess of the minimum monthly APU Reserve "no later than ten (10) days after the last day of the Rent Period to which the APU Reserves relate."  (*Id.* at ¶ 11.4.)  In sum, the monthly rent and minimum related costs for the term of the lease is $178,960.87 (including sales tax).[4]

Paragraph 14 of the Lease Agreement provides that if Defendants fail to pay money owed within two days of its due date, Defendants must pay late payment charges equal to 5% of such payment.  (Kopacz Dec. ¶ 7, Lease Agreement ¶ 14.3.)  Paragraph 8 of the Lease Agreement provides that throughout the term of the Lease, Defendants bear the cost of maintenance, FAA airworthiness directives, mandatory service bulletins and any component service or overhaul work on the Airframe and related parts.  (Kopacz Dec. ¶ 8, Lease Agreement ¶ 8.1.)

The Lease Agreement contains a "hell or high water" clause, providing that:

[T]he Lessee is unconditionally obliged to pay all Rent and other amounts due for the entire Term no matter what happens, even if the Aircraft is damaged or destroyed, if it is defective or the Lessee can no longer use it.  The Lessee is not entitled to reduce, deduct, counterclaim or set off against Rent or any other amount due to the Lessor [Peyton].

(Lease Agreement ¶ 25.)  Defendants Hayman Woodward and Leonardo Freitas executed a guarantee of Clover Aviation's obligations under the contract ("Guaranty and Indemnity Agreement") in which they "unconditionally and irrevocably guarantee[] to the Lessor [Peyton] the due and punctual observance and performance of all of the Secured Obligations."  (*See*

---

[3] Auxiliary Power Units ("APU") are used in lieu of ground support equipment.

[4] This amount includes the monthly rental payment ($146,500), the minimum engine reserve ($22,992), the minimum APU payment ($628.87), and sales tax ($8,840).  (*See* Kopacz Dec. ¶ 20; Supp. Kopacz Dec. ¶ 58, Dkt. 43; Ex. 4, Dkt. 43-4.)

Kopacz Dec. ¶¶ 25-26, 34-35; Ex A-2 ("Woodward Guarantee and Indemnity Agreement")
¶ 2.1.1; Ex. A-3 ("Freitas Guarantee and Indemnity Agreement") ¶ 2.1.1.)

After the parties executed the Lease Agreement, Defendants often did not pay timely rent
and were in arrears.  (*See* Jan. 28, 2019 Tr. at 2; Nov. 13, 2019 Tr. at 3; Freitas Dec. ¶¶ 7, 8.)
Defendants failed to pay rent for August, September, October and November of 2019.  (*See*
Kopacz Dec. ¶ 17; Freitas Dec. ¶¶ 4,7; Nov. 13, 2019 Tr. at 3.)  Defendants also failed to pay the
associated Engine Reserve and APU Reserve payments.  (Kopacz Dec. ¶ 18.)  The Lease
Agreement provides that any failure on the part of the Lessee to pay any rent installment or any
other amount due within five business days of written notice of such failure constitutes an "Event
of Default."  (Lease Agreement ¶ 27.1.2.)  On October 9, 2019, Plaintiff notified Defendants, by
letter, that they were in breach of the agreement for failure to pay monthly rent and related
payments.  (*See* Supp. Kopacz Dec. ¶ 48, Dkt. 43; Ex. 1, Dkt. 43-1.)  The lease provides that
upon the occurrence of an "Event of Default," and any time thereafter as long as the default is
continuing and outstanding defaults have not been remedied, that Peyton may, *inter alia*,
repossess the Aircraft, retain the $500,000 security deposit, and exercise any or all other
remedies available existing at law or in equity.  (Lease Agreement ¶¶ 28.1, 28.1.4, 28.1.6.)
Under the terms of the lease, Defendants remain liable for all obligations under the Agreement
notwithstanding the termination of the Agreement.  (*Id.* at ¶ 28.2.)

In an attempt to settle the instant litigation, the parties negotiated an agreement to
purchase the aircraft.  (*See* Kopacz Dec. ¶ 43; Ex. A-4 ("Aircraft Purchase Agreement").)
Defendants consented to Plaintiff's repossession of the aircraft pursuant to the terms of the
Amended Lease Agreement, which the parties executed in the event they were unable to fulfill
the purchase agreement.  (*See* Court Order, Dkt. 36; Supp. Kopacz Dec. ¶ 52; Ex-2 ("2019 Lease

Amendment"), Dkt. 43-2.)  On October 30, 2019, Defendants gave Peyton written notice that the plane was being surrendered.  (*See* Joint Status Update at 3, Dkt. 37.)  Plaintiff moves for summary judgment against Defendants.

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is only material if it has the potential to impact the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).  In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact.  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

In general, summary judgment is proper in a contract dispute where the contract is "wholly unambiguous."  C*ompagnie Financiers de CIC et de L'Union Europeene v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000).  "The matter of whether the contract is ambiguous is a question of law for the court."  *Law Debenture Tr. Co. of New*

*York v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010).

## II.   Liability

### A.   Aircraft Lease Agreement (Claim I)

Plaintiff contends summary judgment is warranted because there is no dispute Defendants have failed to make timely rent payments and Defendants' duty to make lease payments is inescapable in light of the Lease Agreement's "hell or high water" clause.  (Pl. Mem. at 10.)  Defendants do not contest that they have failed to pay timely rent, nor do they dispute that the lease agreement contains a hell or high water clause.  (Freitas Dec. ¶¶ 4,7.) Rather, Defendants, citing to cases involving commercial property leases and to proposed (not enacted) legislation, urge that Plaintiff is not entitled to accelerated damages.  (*See* Defs. Opp'n at 7-8.)

#### 1.   Hell or High Water Clause

"[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms."  *Refinemet Int'l Co. v. Eastbourne N.V.*, 25 F.3d 105, 108 (2d Cir. 1994) (quoting *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) (internal citations omitted).  This principle applies to the enforcement of "hell or high water" clauses—a provision in many equipment leases that obligates the lessee to "make payments regardless of defective performance on the part of the lessor, that is, 'come hell or high water.' "  *See ReliaStar Life Ins. Co. of New York v. Home Depot U.S.A., Inc.*, 570 F.3d 513, 519 (2d Cir. 2009).

Under New York law, "hell or high water" clauses are generally enforceable.  *ReliaStar*, 570 F.3d at 519.  The Second Circuit has recognized that courts " 'have uniformly given full force and effect to hell or high water clauses in the face of various kinds of defaults by the party

seeking to enforce them.' " *Wells Fargo Bank, N.A. v. BrooksAmerica Mortg. Corp.*, 419 F.3d 107, 110 (2d Cir. 2005) (quoting *In re O.P.M. Leasing Servs., Inc.*, 21 B.R. 993, 1006-07 (Bankr. S.D.N.Y. 1982)).

The lease at issue here contains a hell or high water clause making the Defendants obligation to pay rent unconditional.  The clause is unambiguous and enforceable: the lease provides that Defendants are "unconditionally obliged to pay all Rent and other amounts due for the entire Term no matter what happens, even if the Aircraft is damaged or destroyed, if it is defective or the Lessee can no longer use it" and that Defendants are not entitled to reduce, deduct, counterclaim or set off against rent or any other amount due.  (Lease Agreement ¶ 25.) Courts have consistently held that similar clauses are enforceable, unambiguous, and a basis for summary judgment.  *See ReliaStar*, 570 F.3d at 519; *BrooksAmerica Mortg. Corp.*, 419 F.3d at 110; *see e.g.*, *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, No. 17-CV-6851 (SHS), 2019 WL 3802178, at *1 (S.D.N.Y. Aug. 13, 2019) (granting summary judgment and enforcing "hell or high water" clause in equipment lease); *Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 360–61 (S.D.N.Y. 2002) (granting summary judgment and enforcing "hell or high water" clause in aircraft lease).

Plaintiff's motion for summary judgment as to the enforceability of the hell or high water clause is granted.  The defendants committed themselves to making lease payments without exception.

### 2.    Damages

With respect to damages, Peyton's motion seeks accelerated damages or in the alternative for presently ascertainable damages past due under the contract, with late fees as specified in the contract.  Defendants raise no factual issues regarding rental and associated payments Plaintiff

claims are due (*see* Nov. 13, 2019 Tr. at 3-4), but urge that accelerated damages are not

warranted.  Defendants do not raise a triable issue with respect to damages.  Peyton has

demonstrated it is entitled to summary judgment on presently ascertainable damages of

$961,963.40 from August 2019 through December 2019, which is the amount that Defendants

would have paid pursuant to the Lease Agreement.  (*See* Supp. Kopacz Dec. ¶ 57; Ex. A-4

Spreadsheet (detailing amounts owed per month).)

Plaintiff has not demonstrated it is entitled to accelerated damages.  There is no provision

in the contract providing for the acceleration of payment in one lump sum upon default.  *See The*

*Edward Andrews Grp., Inc. v. Addressing Servs. Co.*, No. 04CIV6731LTSAJP, 2005 WL

3215190, at *5 (S.D.N.Y. Nov. 30, 2005) (explaining "[a]n acceleration clause is one type of

liquidated damages provision, which in its usual form requires a party who defaults on

installment payments to pay the balance of the debt in one lump sum.").  Plaintiff fails to cite any

support in the record for its claim that damages have been accelerated.[5]

Peyton also seeks to recover $462,000 for certain necessary aircraft maintenance, which

Defendants are liable for pursuant to paragraph 8 of the Lease Agreement.  (*See* Supp. Kopacz

Dec. ¶ 53; Ex. A-3 Estimate.)  Defendants do not dispute that they are obligated, by contract, to

pay for the cost of repairing the landing gear (*see* Lease Agreement ¶ 8.1), but submit that there

is no support for this claim.  (Defs. Opp'n at 9.)  Peyton submitted, on reply, an estimated

invoice detailing that the cost of maintenance will exceed $462,000.  (*See* Supp. Kopacz Dec. ¶

53; Ex. A-3 Estimate.)  Peyton does not identify what airplane maintenance is covered by the

$462,000 sought.  There is no dispute that Peyton is entitled to recover for maintenance due, but

---

[5] To the extent Defendants argue Peyton is not entitled to accelerated damages because it would lead to an unenforceable penalty, the argument is moot because there is no provision in the contract, or support in the current record before the Court for awarding accelerated damages.

Peyton must specify what maintenance is covered and submit sufficient documentation to support its claim.

### B.    Aircraft Purchase Agreement (Claim 2)

Plaintiff also seeks summary judgment on a claim for breach of the aircraft purchase agreement that was negotiated to settle the instant litigation.   Defendants oppose on the ground that the claim was never pleaded in the Complaint.  New claims cannot be pled in summary judgment briefs and therefore, the Court need not consider it.  *See Bal v. Manhattan Democratic Party*, No. 16-CV-2416 (PKC), 2018 WL 6528766, at *2 n.2 (S.D.N.Y. Dec. 12, 2018), ("[C]ourts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions at the summary judgment stage"), *aff'd*, 808 F. App'x 55 (2d Cir. 2020) (internal quotation marks and citation omitted).

## CONCLUSION

For the reasons stated, Peyton's motion for summary judgment is granted in part.  Peyton is awarded all rental and associated payments of $961,963.40 through December 2019.  Present and future rent payments are owed as they become due.  Peyton is entitled to recover for past maintenance due, but must specify what maintenance is covered by the $462,000 sought and submit sufficient documentation.

The parties are directed to confer and Peyton is directed to submit a proposed judgment, accompanying declaration, and spreadsheet detailing any outstanding rent and associated payments, including any late fees that have accrued from December 2019 to the present by July 31, 2020.

Peyton is also awarded attorneys' fees for the breach of the Aircraft Lease (to be briefed

separately) as provided for under the contract.[6]

The Clerk of the Court is directed to terminate the motion at Docket 38.

Dated: New York, New York                    SO ORDERED
       July 24, 2020

                                                     _____

                                                     PAUL A. CROTTY
                                                     United States District Judge

---

[6] Pursuant to paragraph 30.1 of the lease agreement, Defendants agreed to indemnify Peyton for losses, damages, penalties, claims, actions, and suits including attorneys' fees arising out of or related to the Lease Agreement.  (*See* Kopacz Dec. ¶ 9; Lease Agreement ¶ 30.1.)